Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
DAVID LYNN ANDERSON,
Petitioner and Appellant,
v.
SOUTH DAKOTA BOARD OF PARDONS AND PAROLES,
Appellee.
[1999 SD 41]
South Dakota Supreme Court
Appeal from the Second Judicial Circuit, Minnehaha County, SD
Hon. Gene Paul Kean, Judge
#20536--Affirmed
Nichole Carper, Minnehaha County Public Defender's Office, Sioux Falls, SD
Attorneys for Appellant.
Mark Barnett, Attorney General
Frank Geaghan, Assistant Attorney General, Pierre, SD
Attorneys for Appellee.
Considered on Briefs Feb 24, 1999; Opinion Filed Apr 7, 1999
PER CURIAM. 
[Â¶1] David Lynn Anderson appeals a trial court order affirming a Parole Board order revoking twenty months of his good time. We affirm.
FACTS 
[Â¶2] In February 1990, Anderson was convicted of one count of distribution of controlled substances and one count of possession with intent to distribute controlled substances. He was given consecutive sentences of seven years and five years in the penitentiary and ordered to serve the seven year sentence first. Anderson was paroled in November 1993, but his parole was revoked in October 1994. As part of the revocation of his parole, the Parole Board also revoked twenty-eight months of good time applicable to the seven year sentence.
[Â¶3] After returning to the penitentiary, Anderson filed a motion with the sentencing court for credit against his sentences for the time he served in jail before his original sentencing in 1990. Accordingly, the sentencing court entered an order in April 1996 granting Anderson 143 days credit for time served.
[Â¶4] In December 1996, Anderson wrote a letter to the Parole Board advising them that, with the credit for time served granted by the sentencing court, he "flat timed"(fn1)  his seven year sentence in May 1994. Since that preceded his parole revocation the following October, Anderson further advised that the revocation of his good time could only apply to his five year sentence and not his seven year sentence. Accordingly, he requested a recalculation of his remaining sentences(fn2)  which was denied by the Parole Board.
[Â¶5] On September 23, 1997, Anderson filed a motion for the Parole Board to reconsider its revocation of good time. He again asserted the Parole Board had incorrectly revoked good time applicable to his seven year sentence instead of his five year sentence and argued that, with the good time applicable to his five year sentence, he flat timed that sentence on September 19, 1997. As a result, he contended it was no longer possible for the Parole Board to revoke good time applicable to the five year sentence. The Parole Board disagreed and, on October 24, 1997, entered an amended order revoking his parole and further revoking twenty months of good time applicable to the five year sentence instead of the twenty-eight months applicable to the seven year sentence.(fn3)  Anderson appealed and the trial court affirmed. He now appeals to this Court.
ISSUE 
[Â¶6] Did the Parole Board err in revoking Anderson's good time?
[Â¶7] Anderson repeatedly asserts that good time cannot be revoked from a completed sentence. Accordingly, he contends that by October 1997, it was too late for the Parole Board to revoke the good time applicable to his five year sentence because he flat timed that sentence in September 1997. On that basis, he argues the Parole Board erred in revoking twenty months of his good time.
[Â¶8] Anderson cites only scant authority for his key contention that good time cannot be revoked from a completed sentence. He relies principally on SDCL 24-5-2 which provides in pertinent part that, "[w]henever any inmate has been discharged under the provisions of Â§24-5-1 [i.e., sentence reduced for good conduct], he shall at the time of his discharge be considered as restored to the full rights of citizenship." Anderson also makes reference to the principle noted by the trial court that, "[w]here good-conduct credits have been allowed, and a prisoner's sentence as reduced by such credits has been fully served, the credits may not then be forfeited and the sentence revived." Annotation, Withdrawal, Forfeiture, Modification, or Denial of Good-Time Allowance to Prisoner, 95 ALR2d 1265, 1277 (1964).
[Â¶9] Despite the accuracy of the above quotations, none of Anderson's authorities account for the effect of consecutive sentences on the revocation of good time. In that regard, the general rule is that, "[a]ll possible deductions for good time accredited to a prisoner serving consecutive sentences are destroyed by bad conduct even though such conduct occurs after one or more of the successive sentences has been served." 60 AmJur2d Penal and Correctional Institutions Â§231 (1987) (emphasis added). As more fully explained by the Tenth Circuit Court of Appeals in Grant v. Hunter, 166 F2d 673, 674 (10thCir 1948):


It is well settled that the imprisonment of one serving consecutive sentences is considered a single term, consisting of the aggregate of such sentences for the purpose of computing good time allowance. Under this construction of the statute, the credit for good time for good conduct does not accrue until such credit has been completely earned. Any good time deduction is contingent upon good conduct for the entire period of imprisonment until its allowance will end imprisonment. It follows, therefore, that all possible deduction for good time accredited to a prisoner serving consecutive sentences is destroyed by bad conduct even though such conduct occurs after one or more of the successive sentences has been served. (emphasis added) (footnotes omitted).
[Â¶10] Although this aggregate view of consecutive sentences is not set forth as explicitly in state law as in federal law, it is reflected in SDCL 24-15-7 and SDCL 24-15A-19 which require the time to be served for consecutive sentences to be added together to determine parole eligibility. It is also reflected in SDCL 24-15-24 which permits the Parole Board to reduce good time, "in full or in part" for parole violations. (emphasis added).
[Â¶11] It follows from the foregoing principles that the Parole Board was correct in its original revocation of twenty-eight months of good time related to Anderson's seven year sentence. This is true despite the fact the seven year sentence had already been served by the time of the revocation. Moreover, the Board was also correct in withdrawing the original revocation and in revoking the good time applicable to the five year sentence even though Anderson had already served that sentence by that point and had commenced service of a 125 year sentence for crimes he committed while he was on parole. See State v. Anderson, 1996 SD 46, 546 NW2d 395.
[Â¶12] Affirmed.
[Â¶13] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.
Footnotes
1.  "Flat time" is the total amount of a sentence less good time. 
2.  By this time, Anderson had been sentenced for criminal offenses he committed while on parole. Hence the plural terminology, "remaining sentences." 
3.  The good time related to a particular sentence is calculated according to the duration of that sentence. See SDCL 24-5-1. This explains the difference between the twenty-eight months of good time applicable to Anderson's seven year sentence and the twenty months of good time applicable to his five year sentence.